## JOHN DUNBAR, Respondent,

*vs.*

## ADAM BITTLE, Appellant.

### ERROR TO ROCK CIRCUIT COURT.

The finding of a referee upon an issue of fact, confirmed by the court below, is as conclusive as a verdict of a jury.

Where the case does not purport to set out the whole evidence before the referee, it will be presumed that his finding was justified by the testimony.

The circuit court, on appeal from a justice, cannot render judgment upon the original pleadings for an amount larger than the justice's jurisdiction.

When this is done, the error is fatal, and this court will not permit an amendment by enlarging the *ad damnum*, nor disregard the error appearing upon the judgment record.

In such case, the judgment will be reversed for such cause, unless the excess be remitted and costs of appeal be paid.

This was an appeal from an order of the circuit court refusing a new trial.

The action was commenced before a justice of the peace, upon a promissory note for one hundred dollars, on which there was an endorsement of ten dollars, dated April 16, 1856, payable to W. H. Allison one day after date.

The defendant in his answer, alleged that said note was executed conditionally, and was placed in the hands of D. W. C. Castle, as agent for both of the parties, to be held by him until William H. Allison, the payee named in said note, had finished and completed a certain house, before then sold and conveyed by him, upon the plan and according to the original design of said Allison before said sale. The said Allison had not finished said house according to said agreement, and had procured the delivery of said note without the knowledge or consent of the said Bittle. After judgment

before the justice, the case was removed to the circuit court for Rock county by appeal. At the June term, 1858, the case was referred to Hon. J. M. Keep, as sole referee, to hear, try, and determine the same.

The cause was brought on to be heard before the referee on the 19th day of July, 1858.

The plaintiff introduced in evidence on his part, a promissory note, dated April 16th, 1858, due one day after date, payable to W. H. Allison, for one hundred dollars with interest, signed by the defendant, upon which there was endorsed ten dollars, January 1, 1857.

The plaintiff here rested.

Adam Bittle, the defendant, was then sworn as a witness, who testified as follows:

" I purchased a house and lot of Allison, for twenty-five hundred dollars. The house was one Allison had commenced, but was not completed at the time the trade was made. Allison agreed to finish the house ready to move into. This note was drawn and signed at this time. It was for part of the purchase money. It was left in the hands of D. W. C. Castle. The agreement was that *Castle* should hold the note in his hands until Allison finished the house. Then the note was to be delivered up to Allison. There was considerable part of the work that was not done at this time—about two hundred dollars worth. Allison did some part of it, but he did not finish up the house as he agreed, and I was compelled to go on and finish the work myself. It cost me one hundred eighteen dollars and eighty cents to finish up the house, and it was worth more than that. I never consented that Castle should give up the note, and it was given up by him without my knowledge or consent. I don't know any thing about the endorsement on the note of ten dollars. I never made any payment on the note."

On cross-examination, he stated the items in detail, which

went to make up the payment for the house, and proceeded:

"I don't remember any thing about the mortgage to Bushnell. Allison was to finish the house to the turn of the key. I went on and finished the house." (The defendant here presented a bill, purporting to be an account of expenses and disbursements, and stated)—"That is the work that was left unfinished on the house by Allison, and which was completed by me."

The bill consisted of sundry items for work and materials, amounting to $118 56.

Castle testified as follows: "I recollect the circumstance of the execution of this note. In the arrangement between the parties (Bittle and Allison) there was some work to be done on the house that was to be finished by Allison, and this note was left with me until Allison completed the work on the house—then I was to deliver the note to Allison. "Sometime after this arrangement, Allison came to me and told me the work on the house was done or completed, and I gave him the note. Bittle was not present, and he never gave me an order to deliver the note to Allison. He never consented to the delivery of the note.

Dunbar was sworn in his own behalf, and testified that he knew such a note was given. Heard the nature of the trade talked over. The defendant purchased the house of Allison for $2,500. This note was for part of the purchase money.

Allison was then called for the plaintiff, and testified :

"I sold the house and lot to Bittle for twenty-five hundred dollars, and took house and lot at one thousand dollars; forty acres of land at four hundred dollars. He assumed two mortgages amounting to eight hundred and fifty dollars; cash one hundred and fifty dollars ; this note, one hundred dollars.

"The agreement between me and Bittle was, that I was to go on and finish the house according to the agreement be-

tween me and my carpenter. Bittle one day sent me a proposition by Mr. Hutchinson, to take the house and finish it up for twenty dollars. I finally agreed with Bittle to do it for ten dollars. Biddle said he would endorse the ten dollars on the note, and I went and got the note. I did not agree to finish the cellar. Bittle did not tell me to get the note of Castle."

Upon this evidence the referee found as follows:

"I having heard the above cause, witnesses and counsel for the respective parties, find as matter of fact: that the defendant made, subscribed and delivered the note mentioned, and as described in said complaint as therein described, and that the plaintiff owns the same, and that there is now due thereon the sum of one hundred nine dollars and fifty cents, and as matter of law, that the plaintiff is entitled to recover judgment for that amount.

On the above case, the defendant moved for a new trial, which was overruled, and exception taken. Judgment was rendered upon the report of the referee, for $109, and the defendant appealed.

*Todd & Rockwell* for the Appellant.

1. The evidence shows that the note in question was delivered by *Bittle* to D. W. C. Castle conditionally, to be held by him until Allison completed the house in pursuance of his agreement; and that Allison got possession of the note without the consent of Bittle and without having completed the house; consequently the finding of the referee that Bittle delivered the note, is not supported by the evidence.

2. There is no allegation in the complaint, and no proof of any assignment of the note to Dunbar—the note not being negotiable by delivery or indorsement—the same proof of transfer was necessary as of an account; and the finding of the referee—that the note was the property of the plaintiff—is wholly unsupported by the evidence. Story on Bills, c. 189 ;

7 Barbour, 204; 22 Penn., (10 Harris,) 26; 6 Wendell, 637; 12 Mass., 304.

3. Admitting that the bare possession of the note was evidence of Dunbar's title, still he held it subject to any defence that existed against it in the hands of Allison. 5 Ind., (Porter,) 229.

4. The action having been commenced in a justice's court, the plaintiff could not recover judgment for a sum exceeding one hundred dollars, and the circuit court on appeal could only give such judgment as might have been rendered in the justice's court; consequently the judgment for one hundred and nine dollars and fifty cents damages was improper. 6 Wisconsin, 580.

5. The pleadings were not amended in the circuit court, and the damages in the judgment exceeds the amount claimed by the plaintiff in his complaint.

*M. H. Carpenter* for the Respondent.


*By the Court,* Cole, J. We suppose the finding of the facts by the referee, and which finding is confirmed by the court, as in this case, must be considered as conclusive as the verdict of a jury. It appears that there was evidence offered before the referee tending to show that Bittle agreed to take the house and complete it in consideration of having ten dollars endorsed upon his note left with Castle.

By the original agreement Allison was to have this note delivered to him, when he had completed the house; and as already remarked, testimony was offered which went to show that the parties abandoned this arrangement. Bittle proposing to take the house and finish it for ten dollars, which sum was to be endorsed on the note and the same delivered to the payee.

There is another equally satisfactory answer which might be given to this objection. The case does not purport to con-

tain all the testimony introduced before the referee, and we must therefore presume that his finding of facts was fully authorized by the proofs before him. This observation also disposes of another objection taken to the finding, which is, that there was no evidence to show that the note sued upon belonged to the respondent. We must presume that such testimony was offered, since the referee distinctly finds as a matter of fact that the respondent owned the note.

But we do not see how we can avoid reversing the judgment in this case, unless the respondent will remit the excess over and above the amount claimed in his complaint, and pay the costs of appeal.

The cause was commenced before a justice of the peace, where the party could only recover one hundred dollars damages.

In the circuit court judgment was rendered for one hundred and nine dollars and a half. This is a fatal objection to the judgment, unless a *remittitur* is entered. *Lester vs. French*, 6 Wis., 580. Neither do we think sections 81 and 84 of the code would authorize us either to amend the pleadings by increasing the *ad damnum*, or to disregard this error in the judgment. It was suggested that we ought not to give the appellant costs if a *remittitur* is entered. But in the case of *Lester vs. French, supra*, and in that of *Smith et al. vs. Manchester*, unreported, we held that when a party recovered in the circuit court more than he was entitled to, we could only affirm the judgment in this court upon the condition that a proper *remittitur* was entered and the costs of appeal were paid by the respondent. The appellant, through the oversight or default of his adversary, brings his appeal to this court to correct an error in the proceedings of the court below, and as general rule he should have costs on his appeal. This judgment can only be affirmed on this condition, that the *remittitur* is entered and costs of appeal paid by respondent.